# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

PHALANX GROUP INTERNATIONAL,           §
                                       §
   Plaintiff,                          §
                                       §
v.                                     §     CIVIL ACTION NO. 3:18-CV-0244-B
                                       §
CRITICAL SOLUTIONS                     §
INTERNATIONAL,                         §
                                       §
   Defendant.                          §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Critical Solutions International's (CSI) hybrid motion to dismiss and motion for summary judgment. Doc. 28. For the reasons stated, the Court treats it as a Motion to Dismiss, and **GRANTS** the motion, but allows Plaintiff Phalanx Group International (Phalanx) to replead.

## I.

## BACKGROUND[1]

The question in this case is whether commissions are due on military equipment allegedly sold to Saudi Arabia. The middleman, Plaintiff Phalanx Group International (Phalanx) alleges that the supplier, Defendant Critical Solutions International (CSI), failed to pay it commission on two sets of sales—a set of seven "Husky" mine-detection vehicles, plus approximately twenty-one more. Doc. 25, Pl.'s Am. Compl., ¶¶ 27–28; Doc. 29, Def.'s Mot. to Dismiss, 4–5. At stake are damages over $75,000. Doc. 25, Pl.'s Am. Compl., ¶ 22.

---

[1] Contested facts are noted as such.

By way of background, Phalanx advises companies in the aerospace and defense industries that are seeking to export their products. *Id.* ¶ 6. Phalanx has access to and contacts in the Kingdom of Saudi Arabia (KSA). *Id.* ¶ 8. CSI—which offers explosive-removal products, equipment, and training to militaries and security forces internationally—contracted with Phalanx to facilitate the sale of CSI's products and services to KSA. *Id.* ¶¶ 7–10. The products at issue here are Huskys—mine-detection vehicles.

On December 12, 2013, Phalanx and CSI entered into an initial contract whereby Phalanx promised to sell CSI's products to KSA in exchange for commission. *Id.* ¶¶ 9–11. On December 17, 2013, the parties executed a superceding contract (December 17 SRA), *id.* ¶ 12, which this Court previously held to control the parties' business relationship. Doc. 24, Order, 3 ("[T]he December 17 SRA superceded the December 12 SRA and governs the parties' relationship."). The December 17 SRA set the term of the parties' relationship to expire on December 31, 2015. Doc. 25, Pl.'s Am. Compl., ¶ 13. It was amended several times. Doc. 24, Order, 2 ("On February 14, 2014, July 13, 2015, and January 11, 2016, the parties executed amendments.").

Phalanx alleges that during the contract period, it helped CSI sell seven Huskys to KSA, on which it was never paid commission, despite having made demand for payment. Doc. 25, Am. Compl., ¶¶ 14–16. Thus, on January 30, 2018, Phalanx filed suit against CSI for breach of contract or, in the alternative, unjust enrichment. Doc. 1, Pl.'s Compl., ¶¶ 26–46. Phalanx argued that the December 12 SRA controlled. In response to CSI's first motion to dismiss, the Court dismissed with prejudice the unjust-enrichment claim, but granted Phalanx leave to amend its complaint with respect to the breach-of-contract claim because the Court held that the December 17 SRA superceded the December 12 SRA and governed the parties' relationship. Doc. 24, Order, 4. In

dismissing the unjust-enrichment claim with prejudice, the Court relied on a case in which a party's unjust-enrichment claim was dismissed without prejudice. *Id.* (citing *TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014)).

On July 25, 2018, Phalanx filed its Amended Complaint, which is the subject of this current hybrid motion to dismiss and motion for summary judgment. *See* Doc. 25, Pl.'s Am. Compl. Presumably following the language of this Court's opinion, Phalanx argues that the first set of sales—the seven Huskys—is eligible for a commission under the December 17 SRA. *Id.* ¶¶ 12–16. Phalanx points to emails between Omar Sadek (Phalanx's President) and Scott Butler (CSI's International Business Development Manager), exchanged after the December 17 SRA's effective date, to support its argument that the December 17 SRA provided for these commissions. *Id.* ¶14. Lacking from the Amended Complaint is any mention of subsequent amendments to the December 17 SRA. *See generally id.* Phalanx argues that the December 17 SRA likewise controls the commissions on the alleged additional Husky sales. *Id.* ¶ 14.

In its Motion to Dismiss, CSI argues that the seven Husky sales were not of the type contemplated by the December 17 SRA. Doc. 29, Def.'s Mot. to Dismiss, 6. CSI also argues that even if these sales were covered, Phalanx has not pled that there was a breach, because Phalanx did not satisfy "the express contractual requirement that it submit a properly certified invoice as a condition of entitlement to payment." *Id.* As for the alleged additional sales, CSI argues that Phalanx has failed to plead sufficient facts as to the existence of these sales. *Id.* at 9.

In its Response, Phalanx expands upon its claims, arguing in effect that even if the December 17 SRA did not specifically contemplate commission on the seven Huskys, the parties later agreed that Phalanx was owed commission on these sales. Doc. 33, Pl.'s Resp., 5–7. Phalanx introduces one

of the amendments to the December 17 SRA as evidence of that agreement. Doc. 34, Pl.'s Resp. App'x, 65 (the January 11, 2016 Amendment).

CSI replies that any arguments outside of what Phalanx pled in its Amended Complaint are outside the scope of a motion to dismiss. Doc. 35, Def.'s Reply, 3–4. And it reiterates that Phalanx has failed to allege any facts that there have been additional sales of Husky vehicles that might be covered. *Id.* at 6–7. As all briefing has now been received, CSI's motion is ripe for consideration.

## II.

## LEGAL STANDARD

CSI filed its motion as a motion to dismiss, or in the alternative, motion for summary judgment, and attached a substantial amount of evidence in support as appendices. Doc. 29, Def.'s Mot., 1. Thus the Court must determine first what standard to apply.

A.    *The Court has Discretion to Analyze Hybrid Motions Under Rule 12(b)(6) or Rule 56.*

"When 'matters outside the pleadings' are submitted in support or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12[(d)] grants the courts discretion to accept and consider those materials but does not require them to do so." *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 578 (N.D. Tex. 2005) (citing Rule 12(b) for this proposition, the substance of which is now found in Rule 12(d)); *see* § 1366 Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.) (describing how that amendment took effect on December 1, 2007). Deciding whether Rule 12(b)(6) or Rule 56 is the proper procedural vehicle for resolving an issue is driven by whether a court deems it appropriate to consider materials outside the pleadings

and otherwise not appropriate for a 12(b)(6) analysis. *See generally, St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

Given that no discovery evidence has yet been presented in this case, and that Phalanx asserts that certain information is not in its possession but in CSI's possession, the Court finds it inappropriate to proceed under a summary-judgment posture at this time.

B.    *The Court Addresses the Motion Under 12(b)(6), and thus Limits its Review to Certain Documents.*

"The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)). Some courts will also consider documents attached to a *response* to a motion to dismiss, if these documents incorporated by reference in the complaint. *E.g. Neutron Depot, LLC v. All Web Leads, Inc.*, 2018 WL 3014424, at *2 (W.D. Tex. Feb. 9, 2018). In other words, matter or theories that are first raised in a response without having been referenced in the pleadings are not properly before the Court when it considers a motion to dismiss. *United States v. Del-Jen, Inc.*, 2017 WL 958604, at *4 (N.D. Tex. Mar. 13, 2017), *aff'd sub nom. United States ex rel. Jamison v. Del-Jen, Inc.*, 747 Fed. App'x 216 (5th Cir. 2018). But matters of public record may be judicially noticed without triggering the summary-judgment standard. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

In applying this general rule, courts have held that in breach-of-contract cases, contracts that are not attached to the complaint may be considered under a 12(b)(6) standard when a defendant

attaches the contracts to its motion to dismiss, the contracts were referred to in the complaint, and the contracts are central to a plaintiff's claims. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

However, not all documents relevant to the contract may be considered. For example, when first attached to a motion to dismiss and not referenced in the pleadings, a "chain of emails supporting [a moving party's] contentions about [a] contract's formation is beyond the scope of the pleadings and is not properly considered on a motion to dismiss." *Johnson v. PPI Tech. Servs., L.P.*, 2012 WL 3065499, at *2 (E.D. La. July 27, 2012). In fact, if the moving party attaches to its motion to dismiss an amendment to a contract when the amendment was neither attached to nor referenced in the non-movant's pleading, there is doubt whether even the amendment could be considered at the 12(b)(6) stage. *Id.*

Subject to these limitations on the documents that the Court may consider, the following typical 12(b)(6) pleading standards apply.

C. *Subject to the Preceding Discussion, the Rule 12(b)(6) Standard is Unaltered.*

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal citation omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)."

## III.

## EVIDENTIARY OBJECTIONS

Both parties attach exhibits to support their arguments. As discussed, the Court declines to convert Defendant's Motion to one for summary judgment, and thus only considers the "complaint, . . . documents attached to the complaint, and . . . documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore*, 912 F.3d at 763.

Only CSI raises evidentiary objections to these types of documents. CSI raises no objection to Phalanx's Exhibits A, B, and D, which are, respectively: the December 17 SRA; two emails between Sadek and Butler; and CSI's March 27, 2106 letter terminating its agreement with Phalanx,

signed by CSI's Chief Executive Officer, Patrick Callahan. The Court considers these exhibits that were attached to the Amended Complaint as properly before the Court.

But CSI does argue that Plaintiff's Exhibits C, E, and F should be excluded under Rule 408 because they are communications regarding settlement negotiations. Rule 408 generally provides that "conduct or a statement made during compromise negotiations" "is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim[.]" Fed. R. Evid. 408(a). However, because the Court does not rely on Plaintiff's Exhibits C, E, and F in reaching its conclusion today, the Court finds CSI's evidentiary objections moot. CSI is not barred from reasserting its objections at a later date, if relevant.

 In its Motion to Dismiss, CSI attaches: (1) the Declaration of Tyler Sammis (CSI Director of Products); (2) an August 2014 email describing sales potential in KSA; (3) the Declaration of Patrick Callahan; (4) a January 2014 email from Butler; (5) a October 2014 email from Sadek ; and (6) a March 2016 email from Butler. *See generally*, Doc. 30, Def.'s Mot. to Dismiss App'x. While these documents may be relevant at later stages in the proceedings—for example, potentially at the summary-judgment stage—none of these materials were referenced in the Amended Complaint, thus the Court does not consider them when ruling on the present Motion to Dismiss.

Likewise, the evidence that Phalanx attaches in rebuttal is largely not reviewable on a motion to dismiss. This includes emails about contract formation, the parties' course of business, and amendments to the December 17 SRA. *See generally*, Doc. 34, Pl.'s Resp. App'x.

Thus, in considering the Motion to Dismiss, the Court relies only on: the Amended Complaint; Phalanx's Exhibits A, B, C, D; and this Court's prior orders.

## IV.

# ANALYSIS

A.    *There are Two Types of Military Sales to Foreign Governments—FMS and DCS.*

At the base of this dispute is the sale of military equipment to a foreign nation. Federal statutes govern such sales of military equipment, and thus these statutes form a background to a breach-of-contract analysis. *See* 22 U.S.C. §§ 2751–2799aa-2 (The Arms Export Control Act); 22 C.F.R. §§ 120–30 (International Traffic in Arms Regulations)

Military sales falls into two categories: Direct Commercial Sales (DCS) and Foreign Military Sales (FMS). The Ninth Circuit's recent opinion in *Fidelitad, Inc. v. Insitu, Inc.* concisely describes the difference:

> In FMS transactions, the foreign government contracts directly with the United States, and the United States either provides equipment from its own inventory or purchases it from a contractor. *Trimble Navigation*, 484 F.3d at 703; 22 C.F.R. § 126.6(c). In DCS transactions, the foreign government contracts directly with a United States company, which must obtain an export license from the State Department before supplying the goods. *Trimble Navigation*, 484 F.3d at 703; 22 C.F.R. §§ 123–25.

904 F.3d 1095, 1098 (9th Cir. 2018)**.**

Here, the Amended Complaint alleges that Phalanx is due commissions for the sale of seven Husky vehicles, as well as approximately twenty-one more Huskys. Doc. 25, Am. Compl., ¶¶ 14, 24–28. It is not clear from the face of the Amended Complaint whether these Husky sales were DCS or FMS—only a review of the exhibits and the motion-to-dismiss briefing clarifies that the seven sales were of the FMS variety. *Id.* at Ex. D; Doc. 33, Pl.'s Resp., 6–7. The briefing is silent to the type of sales the additional Huskys might be. And a review of the exhibits attached to the Amended Complaint shows that it is relevant whether the sales were DCS or FMS, especially if—as currently alleged—the December 17 SRA is the only document that controls. Doc. 25, Am. Compl., Ex. B.

Given the differences between the two sets of sales, the Court reviews each set separately to determine whether Phalanx has sufficiently alleged its claims.

**B.**     *To Survive the Motion to Dismiss, Phalanx Must Allege Facts Sufficient to Show the Elements of a Breach-of-Contract Claim.*

To bring a successful breach-of-contract claim in Texas, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.—Houston [14th Dist.] 2005, pet. denied)).

Neither party devotes much argument to the second and fourth elements. Thus, the Court focuses on the first and third elements. And because Phalanx alleges a breach of contract for two distinct sets of Husky sales, the Court considers each set individually.

**1.**     Phalanx Has Failed to Allege that a Contract Existed for the Seven FMS Huskys.

The Amended Complaint alleges that Phalanx is due commissions under the December 17 SRA for the sale of seven Husky vehicles. Doc. 25, Am. Compl., ¶¶ 14, 24–27. The exhibits show that these seven Huskys were FMS transactions. *E.g., id.*, Ex. B, 3. But the December 17 SRA only covered DCS. *Id.*, Ex. A , 11 Att. A § A (setting forth a commission "[f]or Commercial Sales directly contracted to CSI by [KSA]. . ." and making no mention of FMS transactions).[2] Emails between

---

[2] The relevant contractual language is: "For Commercial Sales directly contracted to CSI by the Customer, Representative shall be paid 5% of the total fee invoiced and collected from Customer each month by CSI related to sales facilitated by Representative." Doc. 25, Ex. A, 11 Att. A § A. As defined in the contract: "'Customer' means the Government of the Kingdom of Saudi Arabia and its agents or designees." *Id.*, Ex. A., 1 § 1.4. And "'Representative' means Phalanx Group, including its affiliates, subsidiaries, successors, assigns, officers, directors, employees, contractors and agents." *Id.*, Ex. A, 1 § 1.2.

Butler and Sadek imply that there was a subsequent agreement for a 5% commission on these seven FMS Huskys. *Id.,* Ex. B (January 6 & 8, 2016 emails from Butler to Sadek). In the January 8, 2016 email, Butler described two contracts for Husky sales, one of which fits the description of the December 17 SRA. *Id.* He stated that CSI wished to extend that agreement through December 31, 2018, but Phalanx does not include a memorialization of this extension and the new commission rates in its exhibits. *See id.* Instead, the only official document signed by CSI's CEO Callahan that is currently before the Court states "CSI agrees to pay Phalanx Group International, Inc. a commission for 7x Husky vehicles sold via FMS to the Royal Saudi Land Forces (based on rates/terms of the agreement) . . . [.]" *Id.,* Ex. D (letter dated March 27, 2016, terminating the sales agreement).

In short, missing from Phalanx's exhibits and its Amended Complaint is an official agreement memorializing the commission rate for FMS Huskys. And contrary to what Phalanx alleges in its Amended Complaint, it is not memorialized by the December 17 SRA because that agreement would only cover the seven Husky sales if they were indeed DCS. Neither party has provided the official contract amendment that modifies the December 17 SRA to specify a commission rate on the seven FMS Huskys. Perhaps because it does not exist. But it is clear from the documents attached to Phalanx's Amended Complaint that both parties believed that at some point, some agreement was in place to pay Phalanx for the seven FMS Huskys. *Id.*, Ex. D. Indeed, in its Response, Phalanx shifts grounds to argue just that—in other words, that if the December 17 SRA on its face does not cover the seven Huskys, subsequent agreements do. Doc. 33, Pl.'s Resp., 6–8 ("The contract was amended by a written instrument duly signed by the authorized representative of the parties.").

But a party may not amend its complaint through responsive briefing. *Skidmore Energy, Inc. v. KPMG LLP*, 2004 WL 3019097, at *5 (N.D. Tex. Dec. 28, 2004). Thus, the Court **GRANTS** the

Motion to Dismiss with respect to Phalanx's breach-of-contract claim on the seven FMS Huskys because Phalanx's Amended Complaint relies solely on the December 17 SRA, which on its face does not include commission for these Huskys.[3] Phalanx's breach-of-contract claim for the seven FMS Huskys is hereby **DISMISSED.**

2.      For Future Huskys, Phalanx Has Met its Burden to Allege that a Contract Existed.

As for Huskys sold outside of the contract term, Phalanx again argues that it is the December 17 SRA that requires CSI to pay commission on future sales. Doc. 25, Am. Compl., ¶¶ 12–14. Phalanx provides no information as to whether these alleged future sales were FMS or DCS.

Phalanx provides that commission payments should survive for up to five years after the end of the agreement:

> In light of the fact that [Phalanx] is providing valuable contacts to CSI, any sale made by CSI to [KSA], directly or indirectly, that is facilitated through contacts provided by [Phalanx] to CSI shall be considered a sale made by [Phalanx] and [Phalanx] shall be paid the appropriate commission for a period of up to five years [sic] the end of this agreement.

Doc. 25, Ex. A, 7 § 15.5.

In addition, the January 2016 emails between Butler and Sadek suggest that the terms of the December 17 SRA did extend through March 2016, when CSI terminated the parties' relationship. *Id.*, Ex. B. Indeed, the only other formal document that Phalanx attaches to its Amended Complaint is this March 2016 termination letter. *Id.*, Ex. D. That letter does not imply that the arrangement

---

[3] The Court recognizes that in its July 2018 Order it stated that the December 17 SRA "governs the parties' relationship." Doc. 24, Order, 3. By using this language the Court did not intend to foreclose the possibility that some subsequent amendment or agreement might have altered the December 17 SRA's terms—its July 2018 Order was primarily directed to the question of whether the December 17 SRA superceded a previous contract. *See id.*, 3–4.

for commissions on future sales had been altered in any way from the December 17 SRA's terms. Taking all facts in the light most favorable to the plaintiff, the Court finds that Phalanx has sufficiently alleged that if CSI made sales in a manner covered by Section 15.5, Phalanx would be owed commission. Absent other information not before this Court, it seems that this clause would be in effect into 2021.[4] Thus, Phalanx has sufficiently alleged a contract exists as to future sales.

3.      Phalanx Fails to Sufficiently Allege Breach of a Contract for the Future Huskys.

To state a claim for breach of contract, a plaintiff must also allege the contract was breached—the third element of a breach-of-contract claim. Phlanax has alleged "upon information and belief" that approximately twenty-one additional Huskys were sold, for which it is owed commission. Doc. 25, Am. Compl., ¶¶ 27–28. As discussed above, the December 17 SRA anticipates that Phalanx could recover commission on certain sales, even after the contract's termination.

Specifically, Section 15.5 states that covered sales would include not just sales facilitated by Phalanx, but by sales "facilitated through *contacts* provided by [Phalanx]." *Id.*, Ex. A, 7 § 15.5. Thus, contrary to CSI's contentions, Phalanx need not have alleged "that it worked on any potential transaction other that [sic] the FMS sale of the seven Husky vehicles, or that its efforts actually resulted in a commercial or FMS order other than the FMS order for seven Husky vehicles." Doc. 35, Def.'s Reply, 6–7. And Phalanx argues that concrete evidence of such sales is out of its reach, since no discovery has been conducted in this case. Doc. 33, Pl.'s Resp., 7.

---

[4] Of course, this does not mean in any way that any commissions are actually owed, or any covered transactions exist. Phalanx still must prove its case. However, it has satisfied its burden under 12(b)(6) to show that a contract exists for future sales.

Although alleging "upon information and belief" is sometimes sufficient to survive a 12(b)(6) inquiry, here the Court finds that the current allegations are too sparse to give rise to more than a speculative inference that additional Huskys were sold and that a dispute over these sales is ripe. The Court is confident that given the nature of Phalanx's business, if there have been additional sales, Phalanx will be able to amend its complaint to more thoroughly reflect that—for example, by alleging the date, type, or circumstances of sales, or source of the information.[5] Thus, the Court **DISMISSES** Phalanx's claims for commissions on future sales.

C.    *The Court Revises its Previous Order to Allow Repleading of the Unjust-Enrichment Claim.*

While considering this Motion, this Court's research caused it to reconsider, *sua sponte*, its disposition of CSI's First Motion to Dismiss with respect to Phalanx's unjust-enrichment claim. *See SBN-DVI, LLC v. Crowder*, 2006 WL 5187499, at *1 (S.D. Tex. Mar. 29, 2006) (revising a previous order). Under Federal Rule of Civil Procedure 54(b), a district court is "'free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Quick v. Wal-Mart Stores, Inc.*, 2017 WL 4480884, at *1 (S.D. Tex. Aug. 11, 2017) (quoting *Saqui v. Pride Cent. Am. LLC*, 595 F. 3d 206, 210–11 (5th Cir. 2010)). While this broad procedural power should be used sparingly, it is appropriate here.

In its July 2018 Order, the Court dismissed Phalanx's unjust-enrichment claim with prejudice, following CSI's suggestion that leave to amend would be futile. In support, CSI cited

---

[5] By providing these examples, the Court is not attempting to limit Phalanx to pleading only these sorts of details; the Court is attempting simply to suggest the sort of details that might be sufficient to state a claim, give the facts currently alleged.

*TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014). In that case, the court dismissed a claim for unjust enrichment on the grounds that "there was no suggestion" that either party might argue that an express agreement did not control. *Id.* at 672. But even then, the court allowed the plaintiff to replead, given that "the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead[.]" *Id.*

The Court finds that allowing at least one opportunity to replead is the preferred approach and should have been permitted. As such, the Court hereby modifies its July 2018 Order to allow Phalanx to replead as to its unjust-enrichment claim, but only if it can do so in a manner consistent with this Court's findings.

## V.

## CONCLUSION

To survive a motion to dismiss, a plaintiff must have sufficiently alleged that a contract existed and was breached. But from the face of Phalanx's Amended Complaint, the December 17 SRA does not appear to apply to the seven FMS Husky sales, as only DCS Huskys garnered commission during the project term. The Butler emails imply that a subsequent agreement was reached as to these sales, but not until Phalanx's responsive briefing does it argue that anything other than the December 17 SRA governs. Thus, Phalanx's Amended Complaint fails to sufficiently state a valid claim against CSI for the seven FMS Huskys.

As for the alleged future sales, the Court finds that Phalanx has sufficiently alleged that the December 17 SRA would cover certain sales. But the allegations Phalanx has made as to whether such sales are actually underway are insufficient to rise above the speculative level.

Thus, for the reasons stated, the Court **GRANTS** CSI's Motion to Dismiss (Doc. 28). Phalanx may file an amended complaint that addresses the concerns raised above by **March 20, 2019.** Specifically, Phalanx must more thoroughly address the grounds on which it asserts its claims. If Phalanx is continuing to assert claims for both the seven FMS Huskys and additional Husky sales, Phalanx should specifically and separately articulate the basis for its claims, be it on the December 17 SRA, subsequent amendments, or some other grounds.

Finally, pursuant to its authority under Federal Rule of Civil Procedure 54(b), this Court **VACATES IN PART** its Memorandum and Order of July 10, 2018, and finds that the unjust-enrichment claim should have been **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

**SIGNED: February 26, 2019**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE