UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| PHALANX GROUP INTERNATIONAL, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0244-B |
| | § | |
| CRITICAL SOLUTIONS INTERNATIONAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Critical Solutions International's motion to dismiss (Doc. 40). For the reasons stated, the Court **GRANTS** the motion (Doc. 40) and **DISMISSES** all claims.

## I.

## BACKGROUND

The issue before the Court is whether Defendant Critical Solutions International (CSI) owes Plaintiff Phalanx Group International (Phalanx) commission for Phalanx's facilitation of military equipment sales. Phalanx seeks compensation for CSI's sale of seven "Husky" mine-detection vehicles, as well as for additional, unspecified sales by CSI. *See* Doc. 37, Second Am. Compl., ¶ 42. This Court thoroughly described the history underlying this breach-of-contract case when it granted CSI's previous motion to dismiss (Doc. 29). *See* Doc. 36, Mem. Op. & Order, 1–4. Thus, the Court hereby incorporates the "Background" section of its previous order (Doc. 36). Nonetheless, to provide additional context, the Court briefly summarizes its most recent ruling before turning to the present claims.

A.  *This Court Previously Dismissed Phalanx's Breach-of-Contract Claims and Granted Phalanx Leave to File a Second Amended Complaint.*

In granting CSI's previous motion to dismiss (Doc. 29), this Court found that Phalanx's first amended complaint failed to sufficiently allege the existence of a contract covering the sale of the seven Huskys. Doc. 36, Mem. Op. & Order, 10. The Court concluded that the December 17 Sales Representation Agreement (December 17 SRA)—the only official agreement between the parties submitted by Phalanx—covered only direct commercial sales (DCS). *See* Doc. 36, Mem. Op. & Order, 9–10 (summarizing the difference between direct commercial sales and foreign military sales). The sale of the seven Husky vehicles, however, was a foreign military sale (FMS). *Id.* at 9. Since neither party offered an official contractual amendment to the December 17 SRA specifying a commission rate for the sale of the seven FMS Huskys, the Court found the allegations of a governing contract insufficient. *Id.* at 11. Further, although Phalanx suggested that subsequent agreements addressed the seven-Husky sale, the Court did not consider this argument, because Phalanx failed to raise it in its first amended complaint. *Id.* at 11–12.

Moreover, although Phalanx sufficiently alleged the existence of a contract regarding *additional* Husky sales, the Court concluded that Phalanx did not adequately allege a breach of this contract. *Id.* at 12–14. Specifically, the Court reasoned that Phalanx's allegations, based only "upon information and belief," were "too sparse" to provide a ripe dispute over the sale of additional Huskys. *Id.* at 14 (internal quotation marks omitted). Further, the Court expressed its confidence that, if there were additional Husky sales, Phalanx "[would] be able to amend its complaint to more thoroughly reflect that . . . ." *Id.* Based on Phalanx's bare allegations, the Court dismissed Phalanx's claim for commission on additional sales. *Id.* Nonetheless, the Court permitted Phalanx to file a

second amended complaint, instructing Phalanx to "specifically and separately articulate the basis for its claims . . . ." *Id.* at 16.

B.   *CSI Now Seeks Dismissal of All Claims in Phalanx's Second Amended Complaint.*

On March 19, 2019, Phalanx filed its second amended complaint. *See* Doc. 37, Second Am. Compl. In its second amended complaint, Phalanx once again asserts breach-of-contract claims. *Id.* ¶ 1. Specifically, Phalanx seeks commission for its facilitation of the purchase agreement between the Kingdom of Saudi Arabia (KSA) and CSI of seven Husky vehicles. *See id.* ¶ 42. Moreover, Phalanx seeks the payment of commission for other, additional Husky sales made by CSI. *See id.* ¶ 43. Phalanx acknowledges that the December 17 SRA governs the parties' dispute. *Id.* ¶¶ 31, 39.

In response, CSI filed a motion to dismiss (Doc. 40), seeking dismissal of all claims. Doc. 41, Mem. of Law in Supp. of Mot. to Dismiss, 10. In its motion, CSI reiterates this Court's previous finding that the December 17 SRA provides commission only for DCS—not the seven-Husky FMS. *See id.* at 5; Doc. 36, Mem. Op. & Order, 10–12. Moreover, CSI points out that an amendment to the December 17 SRA (Amendment 1) "explicitly excludes commissions on the seven Husky FMS sale . . . ." Doc. 41, Mem. of Law in Supp. of Mot. to Dismiss, 5. Accordingly, CSI contends that Phalanx has failed to state a breach-of-contract claim pertaining to the seven-Husky FMS. *Id.* at 8. And with respect to additional Husky sales, CSI suggests that Phalanx failed to plead new facts in its second amended complaint that would support its breach-of-contract allegations. *Id.*

## II.

## LEGAL STANDARD

CSI filed its motion as a motion to dismiss or, in the alternative, a motion for summary judgment. Doc. 40, Mot. to Dismiss Second Am. Compl., 1. Accordingly, the Court must determine

first which standard to apply.

Deciding whether Rule 12(b)(6) or Rule 56 is the proper procedural vehicle for resolving an issue is driven by whether a court deems it appropriate to consider materials outside the pleadings and otherwise not appropriate for a 12(b)(6) analysis. *See generally, St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

Given that no discovery evidence has been presented in this case, and that the Court does not consider any evidence outside the pleadings in reaching its decision, the Court finds it inappropriate to proceed under a summary-judgment posture. Thus, the Court analyzes CSI's motion as a motion to dismiss.

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal citation omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal citation omitted).

## III.

## ANALYSIS

A.  *To Survive the Motion to Dismiss, Phalanx Must Allege Facts Sufficient to Show the Elements of a Breach-of-Contract Claim.*

Under Texas law, a breach-of-contract claim requires the plaintiff to show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

The parties' arguments focus on the existence and breach of a valid contract. Accordingly, as in its previous Memorandum Opinion and Order (Doc. 36), the Court focuses on the first and third breach-of-contract elements. And because, once again, Phalanx alleges a breach of contract for both (1) the sale of seven Huskys and (2) the sale of additional Huskys, the Court considers each of the alleged breaches separately.

1. <u>Phalanx Has Again Failed to Sufficiently Allege that a Contract Exists for the Seven FMS Huskys</u>.

Phalanx brings a breach-of-contract claim, asserting that CSI owes Phalanx commission for its facilitation of the seven-Husky sale to the KSA. *See* Doc. 37, Second Am. Compl., ¶¶ 27–52. To succeed on a breach-of-contract claim, Phalanx must show the existence of a valid contract between Phalanx and CSI that requires the payment of commission. *See Aguiar*, 167 S.W.3d at 450. This Court already found that the December 17 SRA did not provide commission for the seven-Husky sale because it was an FMS. *See* Doc. 36, Mem. Op. & Order, 9–10. Specifically, the December 17 SRA contains a section titled "Payment," which states, "[Phalanx's] compensation for its work . . . and the means of payment are set forth in Attachment A . . . ." Doc. 37, Second Am. Compl., Ex. J, 7. And Attachment A provides compensation only for DCS. Doc. 36, Mem. Op. & Order, 10. Further, the amendment to Attachment A—Amendment 1—explicitly indicates that the amended commission rates do not apply to the seven-Husky sale. Doc. 37, Second Am. Compl., Ex. L.

Nevertheless, Phalanx relies upon Paragraph 15.5 of the December 17 SRA, alleging that the plain language of the provision provides commission to Phalanx for FMS, including the seven-Husky sale. Doc. 37, Second Am. Compl., ¶¶ 36–37. In relevant part, Paragraph 15.5 provides:

> [A]ny sale made by CSI to the Customer, directly or indirectly, that is facilitated through contacts provided by Representative to CSI shall be considered a sale made by Representative and Representative shall be paid the appropriate commission for a period of up to five (5) years [from] the end of this Agreement.

Doc. 37, Second Am. Compl., Ex. J, ¶ 15.5.[1] Phalanx contends that Paragraph 15.5 entitles it to

---

[1] The language of Paragraph 15.5 omits the word "from." Nonetheless, Phalanx includes the word "from" in quoting Paragraph 15.5. Doc. 37, Second Am. Compl., ¶ 36. Because CSI does not dispute the actual language of Paragraph 15.5, and acknowledges that it "defines the parties' obligations . . . *following* a termination," the Court assumes that the insertion of "from" reflects the parties' intent. *See* Doc. 43, Reply

payment for the seven-Husky sale, because Paragraph 15.5 includes "indirect[]" sales, which are FMS. Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 7–8. In relying upon Paragraph 15.5, Phalanx urges the Court to reconsider its finding that the December 17 SRA provides commission on only DCS. *Id.* at 9. Specifically, Phalanx suggests that Attachment A, upon which the Court previously relied in finding that the December 17 SRA provided commission for only DCS, does not control, because this provision applies only in specific circumstances.[2] Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 9–10. Rather, Section 15.5 controls. *Id.* at 10. And because Paragraph 15.5 contains a missing term—the "appropriate commission" rate mandated by Paragraph 15.5—Phalanx urges the Court to consider extrinsic evidence of the commission rate for the seven-Husky sale. *Id.* at 8.

CSI, on the other hand, reiterates this Court's previous finding that the December 17 SRA only provides commissions for DCS—not the seven-Husky, FMS-type sale. *See* Doc. 41, Mem. of Law in Supp. of Mot. to Dismiss, 5; Doc. 36, Mem. Op. & Order, 10. Moreover, CSI points out that Amendment 1 "explicitly excludes commissions on the seven Husky FMS sale . . . ." Doc. 41, Mem. of Law in Supp. of Mot. to Dismiss, 5. Further, according to CSI, Paragraph 15.5, which provides for commission following termination of the SRA, does not change this limitation. Doc. 43, Reply Mem. in Supp. of Mot. to Dismiss, 3. Paragraph 15.5 is a subsection of the "Termination" section of the December 17 SRA. *See* Doc. 37, Second Am. Compl., Ex. J, ¶ 15. And CSI alleges that Phalanx

---

Mem. in Supp. of Mot. to Dismiss, 5 (emphasis added).

[2] Phalanx argues that "[t]he only reference to Attachment A within the body of the SRA is found in Section 14.1 . . . ." Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 9. And Section 14.1 "outlines a very specific fact pattern" relating to the rejection of orders, which is irrelevant here. *Id.* at 9–10. Thus, according to Phalanx, Attachment A does not apply. *Id.* at 10. But as CSI points out, Phalanx's assertion that Section 14.1 is the only provision referencing Attachment A is false: Paragraph 16, "Payment," explicitly refers to Attachment A. Doc. 43, Reply Mem. in Supp. of Mot. to Dismiss, 7; *see* Doc. 37, Second Am. Compl., Ex. J, ¶ 16.

acknowledges that the seven-Husky sale occurred before termination of the December 17 SRA. Doc. 43, Reply Mem. in Supp. of Mot. to Dismiss, 6 (citing Doc. 37, Second Am. Compl., ¶¶ 10–21). Thus, CSI contends that Paragraph 15.5 does not apply to the seven-Husky sale. *Id.* at 6–7. Alternatively, CSI argues that even if Paragraph 15.5 could apply to the sale, the "Payment" provision of the December 17 SRA is more specific and thus controls. *Id.* at 5–6.

The Court agrees with CSI's latter point—the Payment section is more specific and thus controls the dispute. Under Texas law, the Court must construe a contract in its "entirety . . . consider[ing] each part with every other part . . . ." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 408 (5th Cir. 2006). Moreover, courts must derive the intent of the parties regarding the meaning of an unambiguous contract "from the agreement itself, not from the parties' present interpretation . . . ." *Id.* at 407 (quoting *Purvis Oil Corp. v. Hillin*, 890 S.W.2d 931, 935 (Tex. App.—El Paso 1994, no writ)). Additionally, "a specific contractual provision prevails over a general provision." *In re Davis Offshore, L.P.*, 644 F.3d 259, 266 (5th Cir. 2011).

The issue before the Court is whether Phalanx has sufficiently alleged that CSI owes commission to Phalanx for the seven-Husky sale—an indirect sale—based on the December 17 SRA. *See* Doc. 37, Second Am. Compl., ¶¶ 36–39 (seeking to enforce a provision of the December 17 SRA).[3] Even assuming, for the sake of argument, that the seven-Husky sale occurred after the termination of the December 17 SRA, the language of Paragraph 15.5 is not determinative because

---

[3] Phalanx referred to and attached correspondence demonstrating the alleged rate of commission owed for the seven-Husky sale. *See* Doc 37, Second Am. Compl., ¶ 35; Doc. 37, Second Am. Compl., Ex. M, 6. But Phalanx again fails to offer "an official agreement memorializing the commission rate for FMS Huskys." Doc. 36, Mem. Op. & Order, 11. And Phalanx does not allege that the December 17 SRA was subsequently amended to include commission for the seven-Husky sale. *See* Doc. 37, Second Am. Compl. Thus, the Court considers only whether the December 17 SRA provides a basis for Phalanx's breach-of-contract claim.

the Payment section of the December 17 SRA is more specific, and this section provides no commission for the seven-Husky sale. *See* Doc. 37, Second Am. Compl., Ex. J, ¶ 16.

Paragraph 15.5 requires CSI to pay "appropriate commission" for direct and indirect sales. Doc. 37, Second Am. Compl., Ex. J, ¶ 15. And the Payment section, which incorporates Attachment A (titled "Representative Compensation and Payment") sets forth a specific rate of commission. *See id.* ¶ 16; *id.* at 11. Further, Attachment A states that "[a]ny and all compensation and payment terms shall survive the expiry or termination of this agreement." *Id.* Thus, even with respect to a post-termination sale, Attachment A contemplates the commission owed under Paragraph 15.5. Accordingly, Attachment A is more specific than Paragraph 15.5 and therefore controls. *See In re Davis Offshore L.P.*, 644 F.3d at 266.

Attachment A, however, only provides commission for DCS. *See* Doc. 37, Second Am. Compl., Ex. J, 11 (covering "[c]ommercial sales directly contracted to CSI"). And Amendment 1 to Attachment A specifically excepts "the current FMS case of 7 x Husky Vehicles" from its revised commission rates. Doc. 37, Second Am. Compl., Ex. L. Thus, even if Paragraph 15.5 applies to the seven-Husky sale, Phalanx is not entitled to commission for this sale under the December 17 SRA.

And the Court rejects Phalanx's suggestion that the percentage rate for commission owed under Paragraph 15.5 is a "missing term" from the December 17 SRA. *See* Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 8. As this Court has previously explained, "theories that are first raised in a response without having been referenced in the pleadings are not properly before the Court when it considers a motion to dismiss." Doc. 36, Mem. Op. & Order, 5 (citing *United States v. Del-Jen, Inc.*, 2017 WL 958604, at *4 (N.D. Tex. Mar. 13, 2017), *aff'd sub nom. United States ex rel. Jamison v. Del-Jen, Inc.*, 747 F. Appx'x 216 (5th Cir. 2018)). Phalanx did not explicitly raise this "missing term"

argument in its second amended complaint; rather, Phalanx developed the argument in its response. *See* Doc. 37, Second Am. Compl.; Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 8. But to the extent that Phalanx implicitly relies upon this theory in its second amended complaint, the Court still cannot "reasonabl[y] infer[]" CSI's liability based on Phalanx's argument. *See Iqbal*, 556 U.S. at 678.

"The parol evidence rule excludes evidence of prior or contemporaneous negotiations and representations that are introduced to vary, add to, or contradict the terms of a valid written instrument, which the rule presumes embodies the complete agreement between the parties." *Harville Rose Serv. v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir. 1971). To find a written agreement incomplete, the Court must determine: "(1) that the writing is facially incomplete and requires extrinsic evidence to clarify, explain or give meaning to its terms, or (2) that when viewed in light of the circumstances surrounding its execution, the writing does not appear to be the complete embodiment of the terms relating to the subject matter of the writing." *Jack H. Brown & Co. v. Toys "R" Us, Inc.*, 906 F.2d 169, 174 (5th Cir. 1990) (internal citation omitted). In these circumstances, "parol evidence is admissible to clarify, explain, or give meaning" to an incomplete writing, "but only insofar as the evidence does not vary or contradict those terms of the writing that are complete and unambiguous." *Id.* at 175.

Here, the parol evidence rule bars the admission of extrinsic evidence to supplement the December 17 SRA. First, the Court finds nothing in the December 17 SRA that requires clarification, explanation, or meaning. *See id.* at 174. Rather, Attachment A explicitly provides a 5% commission rate for sales "directly contracted to CSI . . . ." Doc. 37, Second Am. Compl., Ex. J, 11. Further, Attachment A states that its compensation terms endure after the termination of the December 17 SRA. *Id.* And Amendment 1 to Attachment A sets forth new commission rates "for

future sales, not including the current FMS case of 7 x Husky [v]ehicles." Doc. 37, Second Am. Compl., Ex. L. Neither Attachment A nor Amendment 1 contains terms suggesting that Phalanx is owed commission on the FMS of seven Huskys—a suggestion that would warrant clarification, through extrinsic evidence, of the applicable commission rate.

Second, the December 17 SRA "appear[s] to be the complete embodiment of the terms relating to the subject matter of the [December 17 SRA.]" *Jack H. Brown & Co.*, 906 F.2d at 174. Most notably, the December 17 SRA states:

> This Agreement contains the entire agreement between the Parties and it supersedes all previous agreement and proposals, oral or written, and all negotiations, conversations, or discussions between the Parties related to this Agreement. This Agreement is the entire agreement between the Parties and shall not be amended or modified except by a written instrument duly signed by authorized representatives of the parties.

Doc. 37, Second Am. Compl., Ex. J, 9. This merger clause evidences the parties' intent that the December 17 SRA "serve as a complete and final expression of their agreement." *Delta Brands, Inc. v. Wysong & Miles Co.*, 1998 WL 641810, at *7 (N.D. Tex. Sept. 14, 1998). Additionally, nothing on the face of the December 17 SRA suggests that terms related to the December 17 SRA exist outside of the contract: it identifies the parties of the contract; the purpose of the contract; the parties' respective obligations; and the terms of payment under the contract. *See* Doc. 37, Second Am. Compl., Ex. J, 1–4, 7; *see Halmos v. Digital Motorworks*, 2003 WL 147529, at *3 (5th Cir. Jan. 6, 2003) (unpublished) (finding a letter that "identifies the parties, the object of the contract . . . , the price to be paid, and the conditions upon which each party has a right to tender performance" to be a "complete contract" although "not the most thorough contract ever written"). Because the December 17 SRA is a complete agreement, the Court cannot consider parol evidence to add to its

terms. *See Harville Rose Serv.*, 448 F.2d at 1349; *Jack H. Brown & Co.*, 906 F.2d at 174.

Finally, even if the Court found the December 17 SRA incomplete and considered extrinsic evidence to define the "appropriate commission" mandated by Paragraph 15.5, Phalanx's parol evidence would be inadmissible. When an agreement is incomplete, parol evidence is admissible only to the extent that it "does not vary or contradict" the "complete and unambiguous" terms of the writing. *Jack H. Brown & Co.*, 906 F.2d at 174. Here, Phalanx alleges that it is entitled to a 5% commission rate for the seven-Husky sale, as evidenced by email communications and CSI's letter of termination. *See* Doc. 37, Second Am. Compl., ¶ 35 (referring to Doc. 37, Second Am. Compl., Ex. M). But Amendment 1 to Attachment A specifically provides a 5% commission rate for FMS Husky sales and states: "The below terms will go into effect for future sales, not including the current FMS case of 7 x Husky Vehicles." Doc. 37, Second Am. Compl., Ex. L. Thus, extrinsic evidence pointing to a 5% commission rate for the seven-Husky sale would contradict the terms of Amendment 1, which is not, according to Phalanx, ambiguous or incomplete.[4] Accordingly, the Court cannot consider this extrinsic evidence, and it therefore cannot "reasonabl[y] infer[]" that Phalanx is entitled to commission for the seven-Husky sale under the December 17 SRA. *See Iqbal*, 556 U.S. at 678. Since Phalanx has not otherwise sufficiently alleged the existence of a contract for the payment of commission on the seven-Husky sale, the Court **DISMISSES** its breach-of-contract claim.

---

[4] Phalanx "agrees that there are NO ambiguities within the SRA, Attachment A, and Amendment 1." Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 13 (emphasis in original). Additionally, Phalanx's allegation of incompleteness pertains to Paragraph 15.5. *See id.* at 8 (explaining that Paragraph 15.5 fails to "recite the percentage rate corresponding to the commission owed" and that this absence is "a missing term of the contract which may be completed by reference to extrinsic evidence").

2. As the Court Previously Found, Phalanx Has Failed to Sufficiently Allege a Breach of Contract for Additional Husky Sales.

Phalanx also brings a breach-of-contract claim for commission owed on the sale of additional Husky vehicles. Doc. 37, Second Am. Compl., ¶ 43. To show the existence of a contract for commission, Phalanx points to Paragraph 15.5 and the extension (Amendment 1) of the December 17 SRA. *See id.* ¶¶ 40–41. Amendment 1 extended the term of the December 17 SRA to December 31, 2018, and provided commission rates for DCS and FMS transactions, provided the sales are "future sales." *See* Doc. 37, Second Am. Compl., Ex. L.[5] Based on Paragraph 15.5 and Amendment 1, Phalanx alleges it is entitled to commission on other sales resulting from its efforts. Doc. 37, Second Am. Compl., ¶ 40.

The Court agrees that Phalanx is entitled to commission on additional sales. Previously, this Court found that "if CSI made sales in a manner covered by [Paragraph] 15.5, Phalanx would be owed commission." Doc. 36, Mem. Op. & Order, 13. Further, neither party disputes that Amendment 1 is a valid contractual amendment to the December 17 SRA. *See* Doc. 37, Second Am. Compl., ¶ 39; Doc. 41, Mem. of Law in Supp. of Mot. to Dismiss, 5. Thus, the Court recognizes the existence of a contract between Phalanx and CSI for commission on additional Husky sales that occurred either: (1) after termination of the December 17 SRA or (2) after the adoption of Amendment 1. Accordingly, Phalanx sufficiently alleged the existence of a contract for additional Husky sales.

But to allege a breach-of-contract claim for additional Husky sales, Phalanx must also allege

---

[5] These rates were effective only "for future sales, not including the current FMS of 7 x Husky Vehicles." Doc. 37, Second Am. Compl., Ex. L.

a breach—not merely the existence of a contract. *See Aguiar*, 167 S.W.3d at 450. In its previous amended complaint, Phalanx alleged, "upon information and belief," that CSI sold approximately twenty-one additional Huskys as a result of Phalanx's efforts. Doc. 25, Am. Compl., ¶¶ 27–28. Since Phalanx had not conducted discovery, it contended that it could not offer concrete evidence of these sales. Doc. 33, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 7. The Court rejected these allegations as "too sparse to give rise to more than a speculative inference that additional Huskys were sold . . . ." Doc. 36, Mem. Op. & Order, 14. Further, the Court offered examples of information that could provide detail for Phalanx's allegations. *Id.*

Despite this guidance, Phalanx again alleges a breach of contract for additional Husky sales, but it provides no new information. *See* Doc. 37, Second Am. Compl., ¶¶ 42–43. Phalanx simply states that it "has been advised that there are additional orders," but was "unable to confirm the actual number of additional vehicles or other details" at the time of filing its second amended complaint. Doc. 42, Pl.'s Opp'n to Def.'s Mot. to Dismiss, 14. Again, Phalanx relies upon its "information and belief" to allege that "the number of such orders may now exceed thirty . . . vehicles . . . ." Doc. 37, Second Am. Compl., ¶ 43. As CSI points out, this Court already found Phalanx's information and belief, standing alone, insufficient to survive a motion to dismiss. Doc. 41, Mem. of Law in Supp. of Mot. to Dismiss, 9; Doc. 36, Mem. Op. & Order, 14. Accordingly, it should come as no surprise that Phalanx's bare allegations—with no substantiation—remain insufficient to allege a breach-of-contract claim. Thus, the Court **DISMISSES** Phalanx's breach-of-contract claim for commission on future sales.

3.  <u>The Court Will Not Permit Phalanx to Reserve the Right to Amend its Second Amended Complaint.</u>

It is common for plaintiffs who oppose a motion to dismiss to seek leave to amend in the event the motion to dismiss is granted. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). And district courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case . . . ." *Id.* Nonetheless, the decision to grant or deny a motion to amend is within the discretion of the district court. *Sims v. Carrington Mortg. Serv., L.L.C.*, 538 F. App'x 537, 539 (5th Cir. 2013) (per curiam).

In its second amended complaint, Phalanx purports to "reserve the right to amend the Second Amended Complaint" once it identifies additional Husky sales.[6] Doc. 37, Second Am. Compl., ¶ 43. Similarly, Phalanx also attempts to reserve its "right" to amend the pleadings and reallege an unjust-enrichment claim upon discovery. *Id.* ¶ 26. This reservation of the right to amend comes after the Court's previous order permitting Phalanx to file an amended complaint that more adequately addresses whether alleged additional sales actually occurred. *See* Doc. 36, Mem. Op. & Order, 14, 15–16. This order also granted Phalanx the chance to replead its unjust-enrichment claim. *Id.* at 14–15. But in Phalanx's second amended complaint—Phalanx's expressly authorized opportunity to amend—Phalanx failed to sufficiently allege additional sales. *See* Doc. 37, Second Am. Compl., ¶ 43. Further, Phalanx chose not to allege an unjust-enrichment claim in its second amended complaint. Accordingly, Phalanx's "right" to amend has passed with the filing of the second amended complaint. This Court therefore **DENIES** Phalanx leave to amend.

---

[6] Phalanx does not characterize its reservation of the right to amend as a motion for leave to amend. Nevertheless, if the Court were to allow Phalanx to reserve this right, it would effectively be granting leave to further amend.

## IV.

## CONCLUSION

For the forgoing reasons, the Court **GRANTS** CSI's motion to dismiss (Doc. 40) and **DISMISSES** all claims.

**SO ORDERED.**

**SIGNED: October 22, 2019.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE